[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 8157
Both parties appeared and were represented by counsel and proceeded on plaintiff's complaint dated December 19, 1994.
Having heard the evidence, the court finds as follows:
The plaintiff and the defendant, whose maiden name was Glick, intermarried at Hempstead, New York on June 8, 1969; that the plaintiff resided in the State of Connecticut for a period of twelve months next preceding the date of the filing of this complaint; that there are no minor children issue of the marriage; the parties had two sons issue of the marriage but who are now adults; that no other minor children have been born to the defendant since the date of the marriage of the parties; that the marriage has broken down irretrievable and that there is no hope for reconciliation.
The plaintiff testified that the breakdown of the marriage resulted from the defendant's lack of love and support for him; that she was spending a great deal of money causing the parties to go deeper in debt at a time when the plaintiff's business was not doing well.
The defendant claims that the breakdown of the marriage resulted from years of emotional and physical abuse from the plaintiff and that he was unfaithful on many occasions. At a deposition taken March 1, 1995, defendant testified she did not know or have the slightest idea of what caused the breakdown of the marriage. However, she claims her present testimony is the truth.
After the plaintiff instituted this dissolution proceeding, the defendant attempted to have the plaintiff arrested; that she caused the police to come to the parties home four or five times; that she did cause the plaintiff to be arrested on one occasion but the charges were subsequently dismissed.
On August 10, 1995, defendant obtained a restraining order which required that the plaintiff vacate the marital home. Subsequently, Teller, J., ordered the defendant to vacate the premises and gave possession of the premises to the plaintiff.
During the marriage, plaintiff purchased property located at CT Page 8158 252 Flanders Road, Niantic, Connecticut.
Since acquiring the property, plaintiff has made many improvements thereon and started a business known as National Tire which business sells tires and repairs automobiles.
The gasoline station with two bays, which was on the property, was leased at a monthly rental of $2,100 paid to National Tire.
At first National Tire was successful resulting in it operating in five different locations. However, in the late 1980's, due to economic pressures, the business became less profitable. During the last 2 years the amount of business was decreased by 30 percent.
Although plaintiff does not recall how much he paid for the property, he now claims that it has a present value of $250,000, but that there is no equity in the property since it is subject to a Norwich Savings Society mortgage of $398,000 and a second mortgage to plaintiff's father, Harry Olshan. (Plaintiff's Exhibit B.) This mortgage was subsequently assigned to Harry Olshan, Trustee of the Olshan Family Trust. (Plaintiff's Exhibit A.)
Plaintiff claims that the second mortgage to his father was security for money he borrowed from his father to maintain the business because of plaintiff's poor financial condition.
Plaintiff who was born October 20, 1946, testified his health is fair, that he is a border-line diabetic, that he has spinal problems and that he is going into the hospital September 5, 1996 for reconstructive surgery on his left toe which will require16-20 weeks rehabilitation.
Because his medical problems prevent plaintiff from devoting full time to his business, he has had to increase the number of his employees resulting in higher expenses. However, after he recovers from his surgery he should be able to engage full time in the business.
The plaintiff received from the business an annual salary of $57,460 in 1994 and $42,525 in 1995. His annual salary for 1996 is $42,525. However, plaintiff's financial affidavit indicates a gross weekly income of $945 and a net weekly income of $696.61. CT Page 8159
The defendant, who was born October 26, 1946, completed only the 10th grade. Although she was a licensed hair dresser in New York, she cannot obtain a Connecticut hair dresser's license as she is not a high school graduate. She claims she has a bad back, which is not being treated medically since she cannot afford it, and that standing on her feet for any extended time is painful.
Defendant had been employed for approximately two and one-half years at Walmart as a "people greeter" at an hourly wage of six dollars. Presently, she is a part-time chauffeur for Livery Limited working 40 hours per week for six dollars per hour.
Defendant's financial affidavit dated September 3, 1996 indicates she has a gross weekly income from her employment of $166.00 and a net weekly income of $138.00. It appears that defendant has limited prospects for any substantial employment.
During 1982, the parties purchased the marital residence located at and known as 15 Plants Dam Road, East Lyme, Connecticut. On April 1, 1991, plaintiff quit claimed all his right, title and interest in said property to the defendant.
The marital residence is valued at $250,000. (See Defendant's Exhibit 1.) Plaintiff claims that the property has no equity as there is a first mortgage of $180,200 to TNC and a second mortgage to his father, Harry Olshan, in the amount of $150,000. However, the plaintiff quitclaimed his interest to the defendant by deed dated April 1, 1991, which was recorded in the East Lyme Land Records on April 1, 1991, at 2:30 p.m. The mortgage to Harry Olshan, signed only by the plaintiff, was dated April 1, 1991, but was recorded in the East Lyme Land Records on April 1, 1991, at 2:31 p.m., at which time plaintiff did not own the marital residence. Accordingly, the court finds the second mortgage is not a valid mortgage on the marital residence.
In addition to the marital residence, there is a barn located on said premises which contains 6 horse stables. In 1992, at the defendant's insistence, Johnna Schenail (Schenail) a self-employed horse trainer moved into the marital residence. She moved out of the residence after eight to ten months because of stress caused by the constant arguing between the plaintiff and the defendant. Schenail rents 6 stables from the plaintiff at a monthly rental of three hundred dollars. However, she only pays CT Page 8160 the plaintiff $250.00 and keeps $75.00 per month for her care and maintenance of the stables and horses therein. Shenail, who moved back into the marital residence in March or April, pays the plaintiff $100.00 per week for such occupancy.
The defendant claims that the plaintiff has transferred large sums of money to Florida. However, she does not know how much or where it is located. She also accuses the plaintiff of infidelity during the marriage and during a court hearing in 1995 accused the plaintiff of having an affair with Schenail.
The plaintiff denies all of the defendant's accusations, but does admit that he started a relationship with Schenail during February 1996, after this proceeding started and after the defendant was ordered to vacate the marital home.
Although the evidence of the parties is conflicting, it is evident that the marriage has broken down irretrievably and that both parties contributed equally to the breakdown.
A decree dissolving the marriage of the parties is ordered. After considering the factors in Conn. Gen. Sta. §§ 46b-62,46b-81 and 46b-82, and other pertinent statutes, the following orders are entered which the court finds to be fair and equitable:
1. As to the marital residence, the following shall apply:
 a. If defendant wants to keep said property, she shall pay to the plaintiff $35,000 within 30 days hereof. However, if defendant does not wish to keep said property, she shall so notify the plaintiff within 15 days hereof.
 Upon such notice, plaintiff shall have 15 days to decide whether he wants to own said property. If he does, he shall so notify the defendant and pay her $35,000 within 30 days of his notice to the defendant. At that time the defendant shall quitclaim said property to the plaintiff. The plaintiff shall assume the first mortgage on said property and hold the defendant harmless CT Page 8161 from any claims thereon.
 b. If both parties decide they do not want the premises, the property shall be sold, and the net proceeds of such sale shall be divided equally among the parties.
2. The plaintiff shall own the business known as National Tire and the business property located at and known as 252 Flanders Road, Niantic, Connecticut free of any claims by the defendant. He shall hold the defendant harmless from any claims or encumbrances on said property and/or business.
3. The defendant shall keep as her own property, free of any claim by the plaintiff, the 1989 Chevrolet Blazer automobile; the miscellaneous household furnishings; her liberty checking account and her Walmart stock, all listed on her financial affidavit dated September 3, 1990.
4. The plaintiff shall keep as his own property, free of any claim by the defendant, the 1988 BMW automobile; his All American and The Hartford Life Insurance policies with the defendant as the named irrevocable beneficiary; his Liberty Bank account and the bank accounts listed on his financial affidavit dated September 3, 1990.
5. The plaintiff shall transfer to the defendant one-half the present value of the American General IRA or in the alternative pay to her one-half the present value of said IRA within 30 days hereof.
6. Each party shall pay the debts listed on their own financial affidavit, and hold and keep the other harmless from any claims made thereon.
7. The plaintiff shall pay to the defendant as periodic alimony the sum of $200.00 per week for 7 years or the death, remarriage or cohabitation with an unrelated male, whichever is the first to occur. Said alimony is non-modifiable as to term only.
8. Each party shall pay their own attorney's fees.
Vasington, J. CT Page 8162